## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

-------------------------------X

CAMEO FENCE LLC,                     :          No.

                   Plaintiff,    :

                v.          :          **COMPLAINT**

AG-LINER, INC. d/b/a/ FINISHLINE FENCE  :

               Defendant.    :

-------------------------------X

Plaintiff, Cameo Fence LLC ("Cameo"), by and through its attorneys, Morella & Associates, a Professional Corporation, files this Complaint against defendant AG-Liner, Inc. d/b/a Finishline Fence ("Finishline"), alleging as follows:

### PARTIES

1.      Cameo is a limited liability company that is incorporated in the State of Georgia and has its principal place of business at 114 Nichols Lane, Blairsville, Georgia 30512.

2.      Cameo is in the business of the manufacture, distribution, and sale of fencing for agricultural purposes, specifically, fencing for horse pastures.

3.      Finishline is a corporation formed under the laws of the Commonwealth of Pennsylvania with a registered office at 191 Crowe Avenue, Mars, Pennsylvania 16046.

4.      Finishline is also in the business of the manufacture, distribution, and sale of fencing for agricultural purposes, specifically, fencing for horse pastures.

## JURISDICTION

5.    This court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332(a), and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

## VENUE

6.    Venue is proper in this district under 28 U.S.C. z§ 1391(b)(1), in that Finishline resides and/or maintains a registered office in this district (as applicable), and 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTS

7.    This is an action for trademark counterfeiting and infringement of Cameo's registered trademark, Cameo Fence (U.S. Reg. No. 7401961) (the "Mark"), under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and for substantial and related claims of trademark infringement, unfair competition, and dilution under the statutory and common laws of the Commonwealth of Pennsylvania, all arising from the Finishline's unauthorized use of the Mark in connection with the manufacture, distribution, marketing, promotion, offering for sale, and sale of products directly competitive with Cameo.

8.    Cameo seeks injunctive and monetary relief.

A.    <u>Cameo and the Mark</u>

2

9.    Cameo is the owner of the Mark which is registered to cover the following goods: Fences, not of metal; Non-metal wire fencing; Non-metal fence posts; Non-metal fence stays; Non-metal safety caps for T-posts for fences; Non-metal T-posts for fences.

10.    The Mark has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065. Attached as Exhibit 1 is a true and correct copy of the registration certificate and maintenance records for the Mark, which was issued by the USPTO on May 28, 2024.

11.    Plaintiff has used the Mark in commerce throughout the United States continuously since February 15, 1996 in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of fencing and fencing material.

12.    As a result of its widespread, continuous, and exclusive use of the Mark to identify its products and Cameo as their source, Cameo owns common law rights to the Mark.

13.    The Mark is distinctive to both the consuming public and in Cameo's trade.

14.    Cameo has expended substantial time, money, and resources marketing, advertising, and promoting the fencing materials sold under the Mark including through Cameo's product packaging, website, catalogs, printed and digital promotional materials, word-of-mouth marketing, and company-wide sales strategies and efforts, which have been ongoing and consistent since 1996.

15.    Cameo distributes and sells fencing products under the Mark online via Cameo's website, over the phone, and through the efforts of Cameo's sales personnel.

16.     Cameo has had substantial sales of its fencing products under the Mark throughout the United States for decades.

17.     Cameo offers and sells its fencing products under its Mark to farmers and horse hobbyists, for both personal and commercial use.

18.     The fencing products Cameo offers under the Mark are of high quality.

19.     As a result of Cameo's expenditures and efforts, the Mark has come to signify the high quality of the fencing products associated with the Mark, and the Mark has acquired incalculable distinction, reputation, and goodwill belonging exclusively to Cameo.

20.     As a result of its distinctiveness and widespread use and promotion throughout the United States, the Mark is a famous trademark within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. 1125(c), and became famous prior to the acts of the Finishline as alleged herein.

B.     Finishline's Unlawful Activities

21.     In or around August 2023, Cameo became aware that Finishline, through the Google Adwords advertising program, had begun using the Mark in online advertisements.

22.     The online advertisements originating from Finishline appeared in search results for, *inter alia*, the search term "Cameo Fence."

23.     The advertisements originating from Finishline which would appear to consumers had headings which read "Cameo Horse Fence – Official Website" and "Cameo Fencing" with the words "Official Website" appearing in the subheading. A true and correct copy of a screen capture collected by Cameo reflecting these online advertisements are attached hereto as Exhibit 2.

24.     Cameo never authorized Finishline to use its Mark under any circumstances.

25.     The online advertisements Finishline promulgated would direct consumers to Finishline's website, where such consumers were solicited to purchase fencing products which are not associated with Cameo's products.

26.     The online advertisements are facially deceptive as they directly use the literal elements of the Mark in connection with products similar to those sold by Cameo.

27.     The online advertisements also, erroneously and deceptively, lead consumers to believe that Finishline's website was the "Official Website" of "Cameo Fence" or otherwise that the goods Finishline provided were associated with the Mark or the products sold by Cameo.

28.     On August 23, 2023, Cameo sent a cease-and-desist letter to Finishline regarding these deceptive online advertisements. A true and correct copy of said correspondence is attached hereto as Exhibit 3.

29.     The aforementioned correspondence made Finishline aware of its infringement of Cameo's Mark and demanded that Finishline immediately cease and desist using the Mark in its online advertisements.

30.     For a brief period of time following the delivery of said correspondence, and upon information and belief, Finishline removed the advertisements which contained the use of the Mark.

31.     In or around February 2025, Finishline again began using the Mark in connection with online advertisements promulgated through Google Adwords.

32.     After discovering that Finishline had again started to use the Mark without authorization or permission, Cameo's President, John Llewellyn called Finishline and again

warned that Finishline was infringing upon the Mark and to refrain from continuing such infringement.

33.    Finishline refused to acknowledge Mr. Llewllyn's warning and did not indicate that it would stop infringing upon the Mark, however, Finishline again removed the advertisements which contained the use of the Mark.

34.    The online advertisements Finishline has promulgated, as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of Finishline's products and have and are likely to deceive consumers into believing, mistakenly, that Finishline's products originate from, or are associated with, Cameo.

35.    Finishline's acts are willful with the deliberate intent to trade on the goodwill of the Mark, cause confusion, deceive consumers, and divert potential sales of Cameo's products to Finishline.

36.    Finishline's willful intent is highlighted by the fact that Finishline stopped its wrongful advertising practices after Cameo sent its cease-and-desist letter in August 2023, only to resume the same wrongful practices at a later date.

37.    Finsihline's acts are causing, and will continue to cause, damage and immediate irreparable harm to Cameo and its goodwill with the consuming public for which Cameo has no adequate remedy at law.

## COUNT ONE
## Trademark Infringement
## (15 U.S.C. § 1114(1))

38.    Cameo repeats and realleges all preceding paragraphs hereof, as if fully set forth herein.

39.    Finishline's unauthorized use of the Mark in its online advertisements, and in connection with fencing products which are competitive to Cameo, as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Finishline's fencing products, and is likely to cause consumers to believe, contrary to fact, that Finishline's fencing products are sold, authorized, endorsed, or sponsored by Cameo, or that Finishline are in some way affiliated with or sponsored by Cameo. Finishline's conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

40.    Finishline has committed the foregoing acts of infringement with full knowledge of Cameo's rights in the Mark and with the willful intent to cause confusion and trade on Cameo's goodwill.

41.    Finishline's conduct is causing immediate and irreparable harm and injury to Cameo, and to its goodwill and reputation, and will continue to both damage Cameo and confuse the public unless enjoined by this court. Cameo has no adequate remedy at law.

42.    Cameo is entitled to, among other relief, injunctive relief and an award of actual damages, Finishline's profits, enhanced damages and profits, statutory damages, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest.

## COUNT TWO
## Unfair Competition
## (15 U.S.C. § 1125(a))

43.    Cameo repeats and realleges all preceding paragraphs hereof, as if fully set forth herein.

44.    Finishline's unauthorized use of language in its online advertisements which is identical or is substantially indistinguishable from the Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Finishline's fencing products, and is likely to cause consumers to believe, contrary to fact, that Finishline's fencing products are sold, authorized, endorsed, or sponsored by Cameo, or that Finishline is in some way affiliated with or sponsored by Cameo.

45.    Finishline's unauthorized use of language in its online advertisements which is identical to or is substantially indistinguishable from the Mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

46.    Upon information and belief, Finishline's conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Finishline with Cameo.

47.    Finishline's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

48.    Finishline's conduct as alleged herein is causing immediate and irreparable harm and injury to Cameo, and to its goodwill and reputation, and will continue to both damage Cameo and confuse the public unless enjoined by this court. Cameo has no adequate remedy at law.

49.    Cameo is entitled to, among other relief, injunctive relief and an award of actual damages, Finishline's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest.

### COUNT THREE
### Trademark Dilution
### (15 U.S.C. § 1125(c))

50.    Cameo repeats and realleges all preceding paragraphs hereof, as if fully set forth herein.

51.    The Mark is distinctive and "famous" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

52.    The Mark became distinctive and famous prior to Finishline's acts as alleged herein.

53.    Finishline's acts alleged herein have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of Cameo's famous Mark.

54.    Finishline's acts alleged herein have tarnished and will, unless enjoined, continue to tarnish, and are likely to tarnish the Mark by undermining and damaging the valuable goodwill associated therewith.

55.    Finishline's acts as alleged herein are intentional and willful in violation of Section 43(c)(1) of the Lanham Act, and have already caused Cameo irreparable damage and will, unless enjoined, continue to damage Cameo, which has no adequate remedy at law.

56.    Cameo is entitled to, among other relief, an award of actual damages, Finishline's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under

Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest.

## COUNT FIVE
### Trademark Infringement
### Pennsylvania Common Law

57.    Cameo repeats and realleges all preceding paragraphs hereof, as if fully set forth herein.

58.    Finishline's unauthorized use of language in its online advertisements which is identical or is substantially indistinguishable from the Mark as alleged herein, on and in connection with fencing products which are competitive to Cameo as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Finishline's fencing products, and is likely to cause consumers to believe, contrary to fact, that Finishline's fencing products are sold, authorized, endorsed, or sponsored by Cameo, or that Finishline is in some way affiliated with or sponsored by Cameo. Finishline's conduct therefore constitutes trademark infringement under Pennsylvania common law.

59.    Finishline has committed the foregoing acts of infringement with full knowledge of Cameo's prior rights in the Mark and with the willful intent to cause confusion and trade on Cameo's goodwill.

60.    Finishline's conduct is causing immediate and irreparable harm and injury to Cameo, and to its goodwill and reputation, and will continue to both damage Cameo and confuse the public unless enjoined by this court. Cameo has no adequate remedy at law.

61.     Cameo is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, and punitive damages, together with prejudgment and post-judgment interest.

**COUNT SIX**
**Unfair Competition**
**Pennsylvania Common Law**

62.     Cameo repeats and realleges all preceding paragraphs hereof, as if fully set forth herein.

63.     Finishline's unauthorized use of language in its online advertisements which is identical or is substantially indistinguishable from the Mark as alleged herein, on and in connection with fencing products which are competitive to Cameo as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Finishline's fencing products, and is likely to cause consumers to believe, contrary to fact, that Finishline's fencing products are sold, authorized, endorsed, or sponsored by Cameo, or that Finishline is in some way affiliated with or sponsored by Cameo.

64.     Finishline's unauthorized use of language in its online advertisements which is identical or is substantially indistinguishable from the Mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

65.     Upon information and belief, Finishline's conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Finishline with Cameo.

66.     Finishline's conduct as alleged herein constitutes unfair competition in violation of Pennsylvania common law.

11

67.     Finishline's conduct as alleged herein is causing immediate and irreparable harm and injury to Cameo, and to its goodwill and reputation, and will continue to both damage Cameo and confuse the public unless enjoined by this court. Cameo has no adequate remedy at law.

68.     Cameo is entitled to, among other relief, injunctive relief and an award of actual damages, Finishline's profits, and punitive damages, together with prejudgment and post-judgment interest.

## COUNT SEVEN
### Tortious Interference

69.     Cameo repeats and realleges all preceding paragraphs hereof, as if fully set forth herein.

70.     Cameo has actual and prospective contractual relations with third party customers which Cameo has acquired or is likely to acquire as a result of use of the Mark.

71.     Finishline's unauthorized, deceptive, and unlawful use of language in its online advertisements which is identical or is substantially indistinguishable from the Mark as alleged herein, constitutes purposeful action to harm Cameo's existing and prospective contractual relations with its customers by diverting existing and prospective customers to Finishline when those customers would otherwise do business with Cameo.

72.     Finishline took purposeful action to promulgate online advertisements which use language identical to or substantially similar to the Mark and Cameo suffered harm as a direct and proximate cause of such action.

73.     Cameo is entitled to, among other relief, an award of actual and consequential damages, together with prejudgment and post-judgment interest.

## COUNT EIGHT
### Conversion

74.    Cameo repeats and realleges all preceding paragraphs hereof, as if fully set forth herein.

75.    The Mark is the sole and exclusive property of Cameo.

76.    The trademark protections afforded to Cameo for use of the Mark give it the exclusive use of the Mark in commerce in connection with fencing and fencing products.

77.    Finishline's intentional use of the Mark, or literal elements that are substantially similar to the Mark, in online advertisements without authority of justification, are a deprivation of Cameo's right to exclusive use of the Mark.

78.    Cameo has suffered harm as a direct and proximate result of Finishline's deprivation of Cameo's rights to the Mark.

79.    Cameo is entitled to, among other relief, an award of actual damages and punitive damages together with prejudgment and post-judgment interest and any other relief this Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Cameo requests judgment against Finishline as follows:

1.    That Finishline has violated Section 32 of the Lanham Act (15 U.S.C. § 1114); Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); and Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

2.    That Finishline has violated Pennsylvania common law.

3.    Granting an injunction temporarily, preliminarily, and permanently enjoining Finishline and their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

a.    engaging in any activity that infringes upon the Mark;

b.    engaging in any activity constituting unfair competition with Cameo;

c.    engaging in any activity that is likely to dilute the distinctiveness of the Mark;

d.    making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Finishline's fencing products are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Cameo or (ii) Cameo's fencing products are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Finishline;

e.    using or authorizing any third party to use any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Cameo or tend to do so;

f.    registering or applying to register any trademark, service mark, domain name (regardless of ccTLD or gTLD), social media account, trade name, or other source identifier or symbol of origin consisting of or incorporating the Mark or any other mark that infringes or is likely to be confused with the Mark, or any goods or services of Cameo, or Cameo as their source;

14

g.    in connection with any advertising on the internet, purchasing the Mark or any other

mark that is a copy, simulation, confusingly similar variation, or colorable imitation of the

Mark, or using any of these marks in any source code or otherwise using the Mark in such

a way that a search for the Mark on the internet will cause any domain name or website of

Finishline to appear in search results;

h.    aiding, assisting, or abetting any other individual or entity in doing any act prohibited

by sub-paragraphs (a) through (g).

4.    Granting such other and further relief as the Court may deem just and proper to prevent the

public and trade from deriving the false impression that any goods manufactured, sold, distributed,

licensed, marketed, advertised, promoted, or otherwise offered or circulated by Finishline are in

any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated,

affiliated, or otherwise connected with Cameo or constitute or are connected with Cameo's goods.

5.    Ordering Finishline to direct all agents, employees, or contractors that distribute, advertise,

promote, sell, or offer for sale fencing products on behalf of Finishline to cease forthwith any

advertisements, signs, displays, and other materials that bear, contain, or display the Mark or any

other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable

imitation of the Mark, and to immediately remove them from public access and view.

6.    In accordance with Section 36 of the Lanham Act, 15 U.S.C. § 1118, directing that

Finishline, at its own expense, recall and deliver up to Cameo's counsel for destruction all

packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other

materials that bear, contain, or display the Mark or any other mark that is a counterfeit, copy,

simulation, confusingly similar variation, or colorable imitation the Mark that are in any Finishline's possession, custody, or control, and all means of making the same.

7.    Ordering Finishline to permanently delete and remove from all online auctions, online marketplaces, search engines, blogs, social media, or websites on or through which Finishline has advertised or sold fencing products that bear, contain, or display the Mark s or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Mark.

8.    Ordering Finishline to make available to Cameo all books, records, including electronic records, and other documents concerning the manufacture, distribution, importation, advertisement, or sale of the fencing products that bear, contain, or display Plaintiff's Mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Mark .

9.    Pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), directing Finishline to file with the court and serve upon Cameo's counsel within thirty (30) days after service on Finishline of an injunction in this action, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which Finishline has complied therewith.

10.    Awarding Cameo three times Finishline's profits attributable to the conduct complained of herein or three times Cameo's damages arising out of Finishline's wrongful acts, whichever is greater, pursuant to Sections 35(a) and 35(b) of the Lanham Act (15 U.S.C. §§ 1117(a), (b)).

12.    Declaring this to be an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Cameo its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

16

13.    Awarding Cameo actual damages, Finishline's profits, treble damages, reasonable attorneys' fees, and costs of the action, together with prejudgment and post-judgment interest and any other relief as the Court finds appropriate.

14.    Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

15.    Awarding such other and further relief as the Court deems just and proper.

<div style="margin-left:40%">

Respectfully submitted,
MORELLA & ASSOCIATES,
A PROFESSIONAL CORPORATION


By: /s/ *Dean R. Phillips*

    Justin T. Papciak
    PA ID No: 307898
    Dean R. Phillips
    PA ID No: 331700
    706 Rochester Road
    Pittsburgh, PA 15237
    Tel:  412-369-9696
    Jtpapciak@morellalaw.com
    drphillips@morellalaw.com

</div>

Dated: June 12, 2025                             *Counsel for Plaintiff*

EXHIBIT 1



# United States of America

## United States Patent and Trademark Office

# CAMEO FENCE

**Reg. No. 7,401,961**

**Registered May 28, 2024**

**Int. Cl.: 19**

**Trademark**

**Principal Register**

Cameo Fence LLC  (GEORGIA LIMITED LIABILITY COMPANY)
PO Box 1171
Blairsville, GEORGIA 30514

CLASS 19: Fences, not of metal; Non-metal wire fencing; Non-metal fence posts; Non-metal fence stays; Non-metal safety caps for T-posts for fences; Non-metal T-posts for fences

FIRST USE 2-15-1996; IN COMMERCE 2-15-1996

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "FENCE"

SER. NO. 98-146,862, FILED 08-23-2023



Katherine Kelly Vidal

Director of the United States
Patent and Trademark Office



---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

EXHIBIT 2



Google

cameo fence

**Turn more views to customers**

Complete your profile to convert your 348 monthly views into customers

**Set up booking**

Let customers book appointments and classes directly from your profile

**Claim your credit**

More customers could be reached with your $500 Ads credit

Only managers of this profile can see this

Sponsored

🌐 thisishInefence.com
https://www.thisishInefence.com

**Cameo Horse Fence - Official Website**

High Quality, Safe Horse Fencing at an Affordable Price. Easy Installation, Ships same day. Beautiful, Strong, Maintenance-Free Fencing Easily Installed. Hard Not to Love. Lightweight. Weather Resistant. Maintenance-Free.

Contact Us · Testimonials

Sponsored

🌐 premier1supplies.com
https://www.premier1supplies.com

**Horse Fence - Premier1Supplies**

Ear Tags, Sheep & Goat Equipment, Clippers and Shears, Netting, Livestock Ear Tags and Tattooing Supplies, 30 Years in Business. Get Full-Color Catalogs. Field Tested Products. Low prices. Ships in 2 business days. Free Shipping on $100+.

Shop Portable QuikFence® · Shop Poultry Supplies · Unique Farm & Home Gifts · About Us

Solar IntelliShock 60 - from $251.00 - Available alone or in kit · More ▾

5.0 ★★★★★ 1 Google review

Fence contractor in Union County, Geor...

🔵 You manage this Business Profil...

**Address:** 43 Youngs Town Rd, Blairsville...

↗ You visited in December 2022

**Hours:** Closes soon · 5 PM · Opens 9 A...

**Phone:** (800) 822-5426

**Update your customers**

Keep your customers up to date about your business

⊕ Add update

Edit your business information

**Google Ads can help your business grow**

Get $500 in Google Ads credit when you spend $500. Terms and conditions apply

↗ Start advertising

Know this place? Share the latest info

**Questions & answers**

Be the first to ask a question



Google

cameo fence

### Installation Video
Watch Our Step By Step Installation Video & View Details.

### Vinyl Post Products
We Have Wood Post Fence Insulators And More. View Pricing.

### Contact Us
Ask a fence expert We answer horse fence questions

Sponsored

finishlinefence.com
https://www.finishlinefence.com

### Cameo Fencing
Official Website — High Quality, Safe Horse Fencing at an Affordable Price. Easy Installation, Ships same day, Beautiful, Strong, Maintenance-Free Fencing Easily Installed Hard Not to Love. Affordable fencing. Best horse fencing. Finishline Fence. Types: Finishline Fencing, Finishline XL.

Cameo Horse Fencing

cameo fence

**CAMEO Horse Fencing 1000 …**
$275.36
cameofencing….
Get it by 2/21

**Cameo Pulse 660ft Electric…**
$138.99
cameofencing….
Get it by 2/21

More on Google

EXHIBIT 3

LAW OFFICES

# LEVY LAW ASSOCIATES, P.A.

9 THURSTON DRIVE
SUITE 100
PALM BEACH GARDENS, FL 33418

———————

STEPHEN G. LEVY
(Admitted NY and CT Bars)

Tel: 561-252-7979
Email: levylevylaw@aol.com

August 23, 2023

**BY FEDERAL EXPRESS**
Lisa P. McCarl
AG-Liner, Inc.
191 Crowe Avenue
Mars, PA 16046-3303

Re: Infringement of Trademarks ("CAMEO" and "CAMEO FENCING")

Dear Ms. McCarl:

We represent Cameo Fence LLC ("Cameo"), a Georgia limited liability company, located in Blairsville, GA. Cameo sells and distributes, among others, rolls of white line monofilament (single extrusion) of nylon-based UV-stabilized polymer which is designed specifically for horse fencing under the trademarks "CAMEO" and "CAMEO FENCE".

Cameo has been selling its CAMEO and CAMEO FENCE branded rolls of white line monofilament and related horse fencing products since at least as early as February 15, 1996. The success of its CAMEO and CAMEO FENCE product sales has been dramatic and its marks have acquired a secondary meaning in the marketplace. The product is marketed throughout the U.S., and the brand is widely advertised on its website, social media, and other media at a significant expense. As a result of such investment and unprecedented success, the CAMEO and CAMEO FENCE brands have naturally become distinctive and very familiar to its many consumers, and Cameo enjoys a prominent reputation in the U.S. for its products of the highest quality. As a result of this reputation and through its advertising and promotion, Cameo has developed extremely valuable good will in its brands, which appears on its products, website, internet platforms and the like.

Moreover, our client has trademark registration applications for CAMEO and CAMEO FENCE pending before the U.S. Patent and Trademark Office (Serial Nos: 97912731 and 98146862, respectively), and its common law rights established over many years of continuous use of these marks are unquestionable. Accordingly, your use of the name "Cameo" in connection with similar or virtually identical products constitutes an infringement of Cameo's trademark rights, as well as unfair competition.

Our attention was recently directed to the adoption and illegal use of the name "Cameo" by AG-Liner, Inc., d/b/a Finishline Fence, to identify its identical products in Google advertising, specifically stating

AG-Liner, Inc.
August 23, 2023
Page 2 of 2

**"*Cameo Horse Fence*"** is the **"*Official Website*"** of the domain www.finishlinefence.com. (See attached). We are aware that on its face your website does not appear to use either the CAMEO or CAMEO FENCE trade name and trademark. However, your "backdoor" use of the CAMEO name in connection with your website constitutes not only trademark infringement but a particularly insidious form of unfair competition.

The pernicious results are obvious and undoubtedly intended. Accordingly, your web user will be introduced to Finishline Fence, a company with a lower rank and reputation and obviously dubious ethics. Consumers among the web user public at large may, and most certainly have, been misled into mistakenly believing that Finishline Fence is approved of or sponsored by our client, or that its products are those of our client. Potential business may well be diverted to you through this subterfuge, if it has not already been.

Given that Cameo ensures a standard of quality for the sale and distribution of horse fencing materials, as its many customers and even competitors would confirm, confusion will lead to substantial damage to our client in terms not only of loss of sales and diverted returns from its advertising expenditures, but injury to reputation as well.

Under the circumstances, we demand that you forthwith cease and desist further use of the trademarks and tradename CAMEO or any variation thereof in connection with not only your advertising but any other promotional medium, and we expect you to take immediate steps to delete the use of CAMEO from Google advertising and any other advertising or social media platform where it may appear. We wish to receive your assurances no later than September 5, 2023 that you will discontinue all use of the name "CAMEO" as outlined above. If you fail to so advise us by that date, we shall, without further notice to you, take such action as we deem advisable to assert our statutory right to recover damages, lost profits, and the costs thereof, and to otherwise protect our client's interests.

Yours very truly,

Stephen G. Levy, Esquire

SGL/em
Attachment
cc: Cameo Fence LLC

*(Practice limited to Federal Trademark and Copyright Law)*